UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEILI PORFIDI MAURICIO CANO,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>Respondents. | Case No.: 3:25-cv-03334-DMS-KSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Pending before the Court is Petitioner's petition for writ of habeas corpus ("Petition"). (Pet., ECF No. 1). Respondents filed a return. (Return, ECF No. 7). Petitioner filed a traverse, (ECF No. 8), and a supplemental brief, (ECF No. 10). The matter was heard on December 23, 2025. (ECF No. 11). Mario G. Portugal appeared for Petitioner, and Matthew Riley appeared for Respondents. (*Id.*). For the following reasons, the Court grants in part and denies in part the Petition.

## I. BACKGROUND

Petitioner, a citizen of Guatemala, entered the United States on or about January 1, 2025 at the Southern Border. (Pet. ¶ 3). Petitioner reports that she came to the United States out of fear of persecution because she actively practices Christianity. (*Id.* ¶ 13). On

January 1, 2025, Petitioner was apprehended by Border Patrol Agents near Sasabe, Arizona. (Return 2). Respondents allege that Petitioner falsely told Border Patrol Agents that her name was "Olvi Ysela Diaz-Mauricio" and that her date of birth was July 3, 2007, which would make Petitioner 17 years older. (*Id.*). Accordingly, Petitioner was processed as an unaccompanied minor and transferred to the Department of Health and Human Services, Office of Refugee Resettlement ("ORR") at the McKinley Children's Center. (*Id.*). On or about March 7, 2025, ORR determined Petitioner was not a juvenile. (*Id.*). Petitioner admitted to a case manager that she was using an alias and revealed her true name and date of birth (May 8, 2001). (*Id.*). ORR confirmed Petitioner's true name and date of birth on March 11, 2025. (*Id.*). On that same day, Petitioner was released from ORR on her own recognizance. (*Id.*). At the time of her release, Petitioner was told to report to Immigration and Customs Enforcement ("ICE") on March 18, 2025. (*Id.*). ICE intended to re-detain Petitioner at that check-in. (*Id.*). On March 18, 2025, Petitioner was arrested by ICE and issued a Notice to Appear. (Pet. ¶ 21); (Return 2). Petitioner was charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and placed in removal proceedings under 8 U.S.C. § 1229a. (Return 2).

Petitioner has a pending I-589 application, filed on or about May 20, 2025. (Pet. ¶ 2). On or about October 29, 2025, the Department of Homeland Security ("DHS") filed a motion to pretermit, arguing that the 2025 Asylum Cooperative Agreement between the United States and Honduras bars Petitioner's asylum claim or, at least, renders it legally insufficient. (*Id.* ¶ 4). Petitioner opposed DHS's motion on or about November 3, 2025. (*Id.* ¶ 17). On November 21, 2025, an immigration judge granted DHS's motion to pretermit and ordered Petitioner removal to Honduras. (Return 2–3). Petitioner appealed to the Board of Immigration Appeals ("BIA") on November 27, 2025. (*Id.* at 3). The appeal remains pending. (*Id.*).

Petitioner has been detained at the Otay Mesa Detention Center since March 18, 2025. (*See* Pet. ¶ 1); (Return 2). Respondents argue that Petitioner is being mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2)(A). (Return 3).

The Petition alleges seven claims for relief: (1) violation of the Fifth Amendment Due Process Clause (substantive and procedural due process), (2) violation of the Fifth Amendment Due Process Clause (illegal retroactive application of expedited removal designation), (3) violation of the Administrative Procedure Act ("APA") (unlawful agency action, in violation of 8 C.F.R. § 239.2(c)); (4) violation of the APA (arbitrary and capricious agency action); (5) violation of the APA (unlawful agency action, in violation of § 1225(b)); (6) violation of the Fourth Amendment; and (7) violation of the Fifth Amendment Due Process Clause (procedural due process). (Pet. 9–17). Petitioner requests a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody and an order prohibiting Respondents from transferring Petitioner from this district without the Court's approval. (*Id.*, Prayer for Relief, ¶¶ 5, 6). Petitioner also requests declaratory relief. (*Id.*, Prayer for Relief, ¶ 4).

## II.     LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A petitioner prevails in his petition for writ of habeas corpus if he shows that his custody violates the Constitution or laws of the United States. *Id.* § 2241(c)(3). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

## III.     DISCUSSION

### A.     Jurisdiction and Exhaustion

This Court has rejected Respondent's jurisdiction argument in several previous cases. *See, e.g.*, *Fanfan v. Noem*, No. 25-cv-03291, 2025 WL 3563739, at *4 (S.D. Cal. Dec. 12, 2025); *Medina-Ortiz v. Noem*, No. 25-cv-2819-DMS-MMP, ECF No. 7, at 3–4 (S.D. Cal. Oct. 30, 2025); *Vasquez Garcia v. Noem*, --- F. Supp. 3d ----, 2025 WL 2549431, at *3–4 (S.D. Cal. Sept. 3, 2025). The undersigned has also joined other district judges in the Ninth Circuit in rejecting Respondent's exhaustion argument. *See Mendez Chavez v. Noem*, Case No. 25-cv-02818, ECF No. 8, at 3; *Esquivel-Ipina v. LaRose*, No. 25-cv-02672, 2025 WL 2998361, at *3–4 (S.D. Cal. Oct. 24, 2025) (finding exhaustion would be

futile in light of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)); *Vasquez v. Feeley*, --- F. Supp. 3d ----, 2025 WL 2676082, at *10 (D. Nev. Sept. 17, 2025) (same). Respondents offer no argument or authority warranting departure from this Court's previous orders, and thus the Court stands on its previous decisions rejecting these arguments.

### C. Merits–Prolonged Detention

Respondents argue that Petitioner is being mandatorily detained pursuant to § 1225(b)(2)(A). (Return 3). Petitioner argues she should instead be provided a bond hearing under 8 U.S.C § 1226(a). (Traverse 8). The Court conducts its analysis assuming Petitioner is properly detained under § 1225(b)(2)(A) and finds that continuing to detain Petitioner without a bond hearing violates her due process rights.

The facts, claims, and arguments presented in this case are similar to those in *Amado v. United States Department of Justice*. No. 25cv2687, 2025 WL 3079052 (S.D. Cal. Nov. 4, 2025) (finding petitioner's detention of thirteen months unreasonable and violative of due process when applying the six-factor test articulated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116–17 (W.D. Wash. 2019)). The Court finds the reasoning of that case persuasive and adopts and applies it wholesale to this case. First, Petitioner has been detained for nine months. (Return 2). "Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable." *Amado*, 2025 WL 3079052, at *5 (collecting cases). Second, "Petitioner's future detention can last several more months or even years during the adjudication of Petitioner's appeal to the BIA." *Id.* at *5. And as Petitioner's counsel proffered at the hearing, Honduras is accepting very few immigrants under the Asylum Cooperative Agreement, rendering it unlikely Petitioner will ever be removed to that country. Respondents had no contrary information. Third, like *Amado*, Petitioner has spent nine months at Otay Mesa Detention "which courts have found is indistinguishable from penal confinement." *Id.* at *6 (citation modified) (citation omitted). That is particularly so where, as here, there is no evidence of danger to the community or risk of flight. Additionally, "[t]he fourth factor weighs in favor of Petitioner

because the record does not indicate that [she] has caused any undue delays," and "[t]he fifth factor weighs in Respondents' favor because there is no indication that the [G]overnment is responsible for undue delay in the removal proceedings." *Id.* As to the last factor—the likelihood that the removal proceedings will result in a final order of removal—Petitioner's counsel argued at the hearing that Petitioner was proceeding pro se when Respondents' motion to pretermit was granted and, thus, believes Petitioner has a strong case before the BIA with appointment of counsel and refined arguments regarding persecution in Honduras. On the present record, the Court is unable to meaningfully assess this factor. Therefore, this factor is neutral. Considering the above *Banda* factors, the Court finds Petitioner's mandatory detention under § 1225(b)(2)(A) has become unreasonable and violates due process.

"The Court notes that even under the *Mathews v. Eldridge* test, the factors support granting Petitioner a bond hearing." *Id.* at *7; *Mathews v. Eldridge*, 424 U.S. 319 (1976). When determining whether Petitioner's procedural due process rights have been violated, the Court must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. First, "the private interest affected by the official action is the most significant liberty interest there is – the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2nd Cir. 2024) (citation omitted). Petitioner has been in detention for nine months and counting, "so any incursion on [her] liberty interest is serious." *Amado*, 2025 WL 3079052, at *7. Next, § 1225(b)(2)(A) provides no "procedural safeguards" in place to determine whether Petitioner's detention has become unreasonable. *Id.* "Accordingly, an individualized bond hearing at which an IJ can consider the non-citizen's dangerousness and risk of flight would add value." *Id.* "Finally, the 'Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail' also weigh in favor of Petitioner." *Id.* (citing *Mathews*, 424 U.S. at 335). "[A] bond hearing does not impact the Government's ability to assure Petitioner's presence if [s]he is ultimately removed, and the Government can raise any concerns regarding Petitioner's danger to the community or [her] flight risk at the bond hearing before the IJ." *Id.* Accordingly, the Court finds Petitioner's mandatory detention under § 1225(b)(2)(A) violates due process.[1]

## IV.  CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** the Petition. However, the Court **DENIES** Petitioner's request to be immediately released from custody. Instead, Respondents are directed to arrange an individualized bond hearing for Petitioner before an immigration court within **fourteen (14) days** of the entry of this Order. The parties are **ORDERED** to file a Joint Status Report within **twenty one (21) days** of this Order's entry, confirming Petitioner received a bond hearing. Further, the Court **ENJOINS** Respondents from transferring Petitioner out of the Southern District of California during the pendency of these proceedings and while Petitioner remains in Respondent's custody.

**IT IS SO ORDERED.**

Dated:  December 24, 2025

Hon. Dana M. Sabraw
United States District Judge

---

[1] In light of this determination, the Court declines to address Petitioner's other claims for relief.